UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| KIM LAURIE, et al. | : | CASE NO. 21-cv-01112 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 15] |
| v. | : | |
| | : | |
| CHARLES WALDER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this civil rights case, Plaintiffs Kim Laurie and Seth Miller, Geauga county court employees, allege that Defendant Charles Walder, the Geauga county auditor, violated their First and Fourth Amendment rights. Plaintiffs claim that Defendant retaliated against them and maliciously prosecuted them. In addition to their federal claims, Plaintiffs bring analogous Ohio law claims.

Now, Defendant moves for partial judgment on the pleadings, seeking judgment on Plaintiffs' federal claims.[1] Defendant generally argues that Plaintiffs' First Amendment allegations revolve around intra-office disputes and do not support First Amendment claims. Plaintiffs oppose the motion.[2]

To make a First Amendment claim, public employees must allege that their speech involved citizen speech on a matter of public concern. Public employees cannot make First Amendment claims for official duty speech.

With this decision, the Court determines whether Plaintiffs sufficiently pled

---

[1] Doc. 15.
[2] Doc. 21.

Case No. 21-cv-01112
GWIN, J.

constitutional violations. For Plaintiffs' First Amendment claims, the Court examines whether Plaintiffs spoke as government employees or as private citizens. The Court also considers whether Plaintiffs spoke on matters of public concern. For Plaintiffs' malicious prosecution claim, the Court examines whether Plaintiffs alleged a deprivation of liberty.

For the following reasons, the Court **GRANTS** Defendant's motion for partial judgment on the pleadings. Because the claims that survive this ruling all arise under Ohio law, the Court declines supplemental jurisdiction and **DISMISSES** those claims without prejudice.

I. Background

While considering Defendant's motion for judgment on the pleadings, the Court assumes Plaintiffs' factual allegations are true.[3]

This case involves a dispute over the Geauga County government's vendor payment rules. Plaintiffs work at the Geauga County Probate/Juvenile Court.[4] Defendant Walder, the Geauga County Auditor, sets vendor payment policies for the Probate/Juvenile Court where Plaintiffs work.[5] Plaintiffs say Auditor Walder set unreasonably strict payment documentation rules.

The vendor payment policy disagreements began in 2018.[6] Plaintiff Laurie worked as a Probate/Juvenile Court administrator. Over the course of several years, Plaintiff Laurie objected to changes that Auditor Defendant Walder's made to purchase order dates, invoice redaction, vendor form language, and invoice verification requirements.[7] More generally,

---

[3] See *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (describing the Federal Rule of Civil Procedure 12(c) standard).
[4] Doc. 8 at ¶¶ 1-2.
[5] *Id.* at ¶¶ 3, 11
[6] *Id.* at ¶ 11.
[7] *Id.* at ¶¶ 12-15, 25-30, 66-70.

- 2 -

Case No. 21-cv-01112
GWIN, J.

Auditor Walder required more payment information than Probate/Juvenile Court Administrator Laurie thought was necessary. Plaintiff Miller later joined the Probate/Juvenile Court staff and joined Plaintiff Laurie in opposing the polices.[8]

In 2019, Plaintiffs visited Defendant Walder's public office to ask about delayed Probate Court vendor payments.[9] The 2019 meeting became an argument and Defendant Walder called the sheriff.[10] Apparently after the initial argument ended, Plaintiff Laurie then again returned the same afternoon to the Auditor's office and Defendant Walder called the sheriff again.[11]

Several months later, Plaintiffs once again visited Defendant Auditor Walder's office.[12] More disagreement resulted. Auditor Walder's administrative assistant asked Plaintiffs to leave the Auditor's office.[13] When Plaintiffs refused to leave, Defendant Walder told auditor staff to call the police.[14] Plaintiffs were later charged with theft of public property and trespassing.[15] Plaintiffs allege that Defendant's repeated calls to law enforcement caused these charges.[16]

Plaintiff Laurie and Plaintiff Miller were tried on these charges by a Chardon Municipal Court jury trial.[17] The municipal court judge dismissed the Laurie charges at the close of the government's case.[18] The jury found Miller not-guilty.[19]

In addition to Defendant Walder's alleged pursuit of criminal charges against

---

[8] *Id.* at ¶¶ 35, 38.
[9] *Id.* at ¶¶ 42-58.
[10] *Id.* at ¶¶ 55-56.
[11] *Id.* at ¶¶ 57-59.
[12] *Id.* at ¶¶ 83-90.
[13] *Id.* at ¶ 88.
[14] *Id.* at ¶ 91.
[15] *Id.* at ¶¶ 92, 131.
[16] *Id.* at ¶¶ 201-10.
[17] *Id.* at ¶ 134.
[18] *Id.* at ¶ 135.
[19] *Id.* at ¶ 136.

Case No. 21-cv-01112
GWIN, J.

Plaintiffs, Plaintiffs allege that Defendant Walder took several other adverse actions. They claim that Defendant Walder barred Plaintiffs from entering Defendant Walder's Auditor office.[20] Plaintiff Laurie also alleges that Defendant Walder blocked emails from Plaintiff Laurie's work email account and wrongly rejected her mileage reimbursement claim.[21]

During her ongoing disagreement with the Geauga County Auditor's office and with Geauga County Auditor Walder, Plaintiff Laurie began campaigning to have the Ohio General Assembly amend the Ohio Revised Code to restrict county auditors' vendor payment authority over common pleas court vendors.[22] Two newspaper articles quoted Laurie about these efforts to change Ohio law regarding Ohio county auditor payment responsibilities.[23] Plaintiff Laurie also gave information to the Ohio Judicial Conference, the Ohio General Assembly, and the Ohio State Auditor's Office.[24]

In 2019, Plaintiffs sued Defendant Walder in this federal court for civil rights violations.[25] Plaintiff Laurie filed the 2019 lawsuit before Plaintiffs were criminally charged with trespassing in Walder's Geauga County Auditor office.[26] After Plaintiffs were criminally charged, Plaintiffs voluntarily dismissed the 2019 civil suit.[27] They subsequently filed this lawsuit, adding a First Amendment retaliation claim. In that additional claim, Plaintiffs allege that Defendant solicited the prosecutor to bring the criminal charges because of Laurie's and Miller's first civil suit.[28]

II. **Legal Standard**

---

[20] *Id.* at ¶ 93.
[21] *Id.* at ¶¶ 32-33, 80.
[22] *Id.* at ¶ 74.
[23] *Id.* at ¶¶ 76-79.
[24] *Id.* at ¶ 75.
[25] *Id.* at ¶ 111.
[26] *Id.*
[27] *Id.* at ¶¶ 180-83
[28] *Id.* at ¶ 111.

- 4 -

Case No. 21-cv-01112
GWIN, J.

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court uses the Rule 12(b)(6) standard.[29] Under that standard, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true."[30] A motion for judgment on the pleadings "is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"[31]

### III. Discussion

#### A. First Amendment Retaliation Claims

Plaintiffs bring two claims for First Amendment retaliation. In Count One, Plaintiffs allege that Defendant Walder retaliated against them by threatening criminal prosecution and by barring them from his Geauga County Auditor office.[32] They claim Defendant took those actions because Plaintiffs criticized Auditor Walder's Probate/Juvenile Court vendor payment policies and practices.[33] In Count Five, Plaintiffs allege that Defendant Walder retaliated by encouraging criminal charges against Plaintiffs to retaliate after Plaintiffs brought the 2019 federal lawsuit against Defendant.[34]

Defendant is entitled to judgment on both First Amendment retaliation claims because Plaintiffs fail to show that their speech was constitutionally protected.

##### a. Standard for Government Employee Speech

To make out a First Amendment retaliation claim, a government employee plaintiff must show that (1) they "engaged in constitutionally protected speech or conduct," (2) the defendant "took an adverse action" against them that "would deter a person of ordinary

---

[29] *See* *Tucker,* 539 F.3d at 549.
[30] *Id.*
[31] *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007)).
[32] Doc. 8 at ¶¶ 142-45.
[33] *Id.* at ¶ 149.
[34] *Id.* at ¶¶ 180-94.

- 5 -

Case No. 21-cv-01112
GWIN, J.

firmness from continuing to engage in that speech," and (3) "a causal connection exists between the protected speech and the adverse employment action."[35]

To plead constitutionally protected speech, a public employee must plead that they spoke "as a citizen" and that the speech was "on a matter of public concern."[36] In the Sixth Circuit, judges decide whether government employee speech is constitutionally protected.[37]

For the speaking as a private citizen requirement, public employees do not speak as private citizens when they speak "pursuant to their official duties,"[38] including their "ad hoc or de facto duties."[39] In other words, a public employee does not plead constitutionally protected speech where the speech at issue "owes its existence to a public employee's professional responsibilities."[40] To decide whether an employee spoke as a private citizen, courts engage in a "practical" inquiry, considering "the speech's impetus; its setting; its audience; and its general subject matter" as "non-exhaustive factors."[41]

For the requirement that the speech also be on a public matter, speech "involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"[42]

### b. Plaintiffs' Speech

Plaintiffs do not make out a First Amendment retaliation claim because they do not sufficiently allege that they engaged in constitutionally protected speech. Plaintiff Miller

---

[35] *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019).
[36] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).
[37] *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 463 (6th Cir. 2017).
[38] *Garcetti*, 547 U.S. at 421.
[39] *Mayhew*, 856 F.3d at 465 (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)).
[40] *Id.* (quoting *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015)).
[41] *Mayhew*, 856 F.3d at 464 (quoting *Garcetti*, 547 U.S. at 424).
[42] *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

Case No. 21-cv-01112
GWIN, J.

does not allege that he spoke as a private citizen or that he spoke on a matter of public concern. Plaintiff Laurie does not allege that she spoke on a matter of public concern.

Plaintiff Miller spoke as an employee carrying out his professional duties, not as a private citizen. The Sixth Circuit factors— "the speech's impetus; its setting; its audience; and its general subject matter"[43]—all suggest that Plaintiff Miller was speaking as an employee. Miller alleges that he went to Defendant Walder's office to ask about late vendor checks.[44] This speech was part of Miller's professional duties because the speech occurred at work, concerned vendor payment, and was directed to the office that sets vendor payment policies.

The Sixth Circuit has held that "most jobs carry with them an inherent duty of internal communication."[45] Here, Plaintiff Miller spoke as part of his duty of internal communication. Because Plaintiff Miller's speech occurred as part of his job duties, he does not sufficiently plead that he spoke as a private citizen.

Even if Plaintiff Miller were speaking as a private citizen, his claim does not meet the second requirement for constitutionally protected speech, speech on a matter of public concern. Slow vendor payments are an internal workplace concern, not a matter of political or social concern to the community or a subject of news interest.

Plaintiff Laurie adequately pleads that she spoke as a private citizen, but she does not plead that she spoke on a matter of public concern. Laurie alleges that she spoke to local media, to the Ohio Judicial Conference, to the State Auditor, and to state legislators about her concerns over Walder's policies.[46] The setting and audience for Plaintiff Laurie's speech

---

[43] *Mayhew,* 856 F.3d at 464.
[44] Doc. 8 at ¶¶ 38-55.
[45] *Boulton,* 795 F.3d at 533 (collecting cases).
[46] Doc. 8 at ¶¶ 74-78.

Case No. 21-cv-01112
GWIN, J.

suggest that it went beyond Plaintiff Laurie's professional duties.

Plaintiff Laurie's claim falls short, however, on the requirement for speech as a matter of public concern. Plaintiff Laurie alleges that she spoke to media and state officials seeking legal changes "to clarify the level of oversight / approval a county auditor can exert over Court billing / payments to contractors."[47] She objected to Defendant's policy requiring the Probate/Juvenile Court provide evidence supporting its vendor invoices.[48]

This internal Geauga County Auditor policy is a technical rule that does not implicate broader political concerns or newsworthiness. The Sixth Circuit has held that exposing corrupt use of public funds is a matter of public concern,[49] but Plaintiff Laurie's allegations do not suggest corruption. If anything, a policy requiring additional verification before public funds are spent is more likely to prevent public corruption than to promote it.

### c. Adverse Action

Even if Plaintiffs had sufficiently pled constitutionally protected speech, their claim would fall short on the second retaliation element: adverse action. Plaintiffs claim that Defendant Walder retaliated against them by calling law enforcement about Plaintiffs' visits to his Geauga County Auditor's office and by prohibiting them from returning.[50] Plaintiff Laurie alleges two additional adverse actions: Defendant blocked her emails and refused her requested mileage reimbursement.[51]

None of these alleged actions rise to the level of an adverse action. "In the context of public employment, an adverse action is one that would 'likely chill a person of ordinary

---

[47] *Id.* at ¶ 74.
[48] *Id.* at ¶¶ 69-72.
[49] *See v. City of Elyria,* 502 F.3d 484, 493 (6th Cir.2007) (collecting cases).
[50] Doc. 8 at ¶¶ 142-49.
[51] *Id.* at ¶¶ 32-33, 80.

- 8 -

Case No. 21-cv-01112
GWIN, J.

firmness from continuing to engage in that activity.'"[52] "Most of the relevant Supreme Court and Sixth Circuit cases concern actual retaliation, not threats of retaliation."[53] Public employee firings make up "the bulk of the cases."[54] Other examples include "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote."[55]

Here, Plaintiffs fail to show that Defendant Walder's actions would chill speech for an ordinary person. They do not allege changes in their employment, nor do they allege financial or emotional injury. Although they allege that Defendant Walder called law enforcement, they also allege that the sheriff repeatedly "refused to respond as the matter was not criminal."[56] Plaintiffs do not sufficiently plead an adverse action supporting their retaliation claim.

Defendant Walder is entitled to judgment on both First Amendment retaliation claims because Plaintiffs did not sufficiently plead the first or second elements: constitutionally protected speech and adverse action.

### B. Fourth Amendment Malicious Prosecution Claim

In Count Six, Plaintiffs claim that Defendant Walder violated their Fourth Amendment rights by sharing information with prosecutors that later led to misdemeanor charges against Plaintiffs.[57]

Plaintiffs do not sufficiently allege the malicious prosecution elements.

A malicious prosecution claim has three elements: (1) the defendant "made,

---

[52] *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).
[53] *Kubala v. Smith*, 984 F.3d 1132, 1140 (6th Cir. 2021).
[54] *Id.*
[55] *Id.*
[56] Doc. 8 at ¶¶ 56, 59.
[57] *Id.* at ¶¶ 198-215.

Case No. 21-cv-01112
GWIN, J.

influenced, or participated in the decision to prosecute" the plaintiff; (2) the prosecution lacked probable cause; and (3) the plaintiff suffered a "deprivation of liberty."[58]

In multiple unpublished cases, the Sixth Circuit has held that "requiring attendance at court proceedings does not constitute constitutional deprivation of liberty."[59] In one of those cases, the Sixth Circuit held that a plaintiff who was released on a personal recognizance bond and "not handcuffed, arrested, jailed, or taken into custody" did not make out a malicious prosecution claim.[60]

Here, Plaintiffs were released on personal recognizance bonds while awaiting the misdemeanor trial.[61] They were not taken into custody.[62] Plaintiff Laurie's charges were dismissed and Plaintiff Miller was acquitted.[63] Plaintiffs do not, therefore, plead a deprivation of liberty.

Defendant is entitled to judgment on the malicious prosecution claim because Plaintiffs do not sufficiently plead the third element, deprivation of liberty.

### C. Whistleblower Retaliation Claim

In Count Two, Plaintiff Laurie brings a § 1983 claim for whistleblower retaliation.[64]

To state a claim under § 1983, a plaintiff must allege that the defendant's conduct "deprive[d] the plaintiff of rights secured by federal law."[65]

Plaintiff Laurie does not allege a constitutional protection for whistleblowers. Plaintiff also does not allege a violation of a federal whistleblower statute. Nor does Plaintiff Laurie

---

[58] *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).
[59] *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018) (collecting cases).
[60] *Id.* at 470, 473.
[61] Doc. 8 at ¶¶ 122-24; Doc. 21 at 12.
[62] Doc. 21 at 12.
[63] Doc. 8 at ¶¶ 134-36.
[64] *Id.* at ¶¶ 152-59.
[65] *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Case No. 21-cv-01112
GWIN, J.

set out facts from which the Court could infer that a federal whistleblower statute applies.

Because Plaintiff Laurie does not allege a violation of federal law, she does not make out a § 1983 claim. Defendant is entitled to judgment on Plaintiff's whistleblower retaliation claim.

### D. Injunctive Relief Claim

In Count Four, Plaintiffs seek an injunction prohibiting Defendant Walder and his staff from threatening criminal prosecution or denying Plaintiffs access to his office.[66] Because Plaintiffs do not sufficiently plead a legal violation by Defendant, Defendant is entitled to judgment on this claim.

### E. State Law Claims

The remaining claims arise under Ohio law: (1) defamation, (2) abuse of process, and (3) malicious prosecution.[67]

A district court "may decline to exercise supplemental jurisdiction" over state law claims when "the district court has dismissed all claims over which it has original jurisdiction."[68] Where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."[69]

Because the Court grants judgment on Plaintiffs' federal law claims, the Court declines supplemental jurisdiction over the remaining state law claims. Those claims are dismissed without prejudice.[70]

### IV. Conclusion

---

[66] Doc. 8 at ¶¶ 172-78.
[67] *Id.* at ¶¶ 160-71, 216-36.
[68] 28 U.S.C. § 1367(c).
[69] *Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (unpublished) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.* 89 F.3d 1244, 1254-55 (6th Cir. 1996)).
[70] *See id.*

- 11 -

Case No. 21-cv-01112
GWIN, J.

For the reasons stated above, the Court **GRANTS** the motion for partial judgment on the pleadings. The Court declines supplemental jurisdiction over the remaining state law claims and **DISMISSES** those claims without prejudice.

IT IS SO ORDERED.

Dated: December 3, 2021  *s/     James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE